**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**PLUG POWER,**

**Plaintiff and**
**Counter Defendant,**

**vs.** **1:26-CV-1277 (MAD/PJE)**

**MAZDAK SHOKRIAN,**

**Defendant and**
**Counter Claimant.**

---

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **DLA PIPER LLP US**<br>1900 N. Pearl Street, Suite 2200<br>Dallas, Texas 75201<br>Attorneys for Plaintiff | **MALLORY T. BIBLO, ESQ.**<br>**GARRETT D. KENNEDY, ESQ.** |
| **ROSENBERG & ASSOCIATES**<br>3518 Travis<br>Suite 200<br>Houston, Texas 77002<br>Attorney for Defendant | **GREGG ROSENBERG, ESQ.** |

**Mae A. D'Agostino, U.S. District Judge:**

## ORDER

Plaintiff Plug Power, Inc. ("Plaintiff" or "Plug") has brought this action against a former employee, Defendant Mazdak Shokrian, alleging a breach of his non-compete agreement. ("Shokrian" or "Defendant"). *See* Dkt. No. 2. On July 24, 2026, the Court granted Plug's motion for a preliminary injunction and enjoined Defendant from engaging in specific conduct "until at least November 10, 2026." Dkt. No. 24 at 39. On July 30, 2026, Shokrian moved to stay the

injunction pending his appeal of the Court's decision and requested that the Court impose a bond. *See* Dkt. No. 27. On August 11, 2026, the Court denied both requests. *See* Dkt. No. 35.[1,2]

Now, Shokrian seeks an order from the Court holding that the non-compete clause restricts his employment only until November 10, 2026, because the tolling provision in his Agreement with Plug does not apply at this stage of the case. *See* Dkt. No. 50 at 18. Shokrian also asks the Court to modify its preliminary injunction to clarify the precise type of work Shokrian is prohibited from engaging in. *See id.* at 18-19. Finally, Shokrian requests that the Court "require increased security under Rule 65(c) or advance the trial under Rule 65(a)(2) if any restriction continues past November 10, 2026[.]" *Id.* at 19. Plaintiff disagrees with each request. *See* Dkt. No. 49.

The Agreement signed by Plaintiff and Defendant states that "during Employee's employment and for a one (1) year period after Employee's employment with the Company ends, whether voluntarily or involuntarily, Employee will not, either directly or indirectly," compete with Plug. Dkt. No. 2 at 57. The Agreement also contains a tolling provision as follows:

> In the event Employee breaches a time-limited restriction contained in this Agreement, Employee hereby acknowledges and agrees that the applicable period of restriction shall be extended by one day for each day Employee is found to have been in violation of such restriction up to, but not to exceed, the length of time that is equal in length to the period of restriction that would have applied absent the violation.

*Id.* at 70.

Shokrian argues that because he has not been "found" to have breached the Agreement, the tolling provision is not triggered and his non-compete obligation should run until November

[1] The Court assumes the parties' familiarity with the factual and procedural background.
[2] Shokrian appealed the Court's preliminary injunction decision, *see* Dkt. No. 25, but subsequently withdrew the appeal by stipulation, *see* Dkt. No. 44.

10, 2026—one year after his termination from Plug. Dkt. No. 50 at 6. Plug argues that the tolling provision is enforceable and "there is significant evidence that Shokrian unlawfully competed with Plug for at least a year, which justifies application of the tolling provision to extend Shokrian's non-compete period through November 10, 2027." Dkt. No. 49 at 8. Plaintiff argues in the alternative that even if the preliminary injunction is not continued until November 10, 2027, equitable considerations warrant the continuation of the injunction until at least the current trial date in June of 2027. *See id.* at 8-10.

Shokrian is correct that the Court has not "found" that he violated his Agreement with Plug. Indeed, as stated in the Court's preliminary injunction decision, "[a]t this stage, the Court need not conclude definitively that Shokrian did in fact violate an enforceable non-compete clause, only that there is a better than fifty percent chance that is the case." Dkt. No. 24 at 24.

However, the Court will not dispense with the preliminary injunction on November 10, 2026. To end the preliminary injunction on that date would treat this litigation and the Court's prior rulings as meaningless. Had no allegations of breach been made by Plug and had this case never been brought before the Court, Shokrian's one-year non-compete clause would have run from the date of his termination—November 10, 2025—for one year, until November 10, 2026. However, Plug has alleged that Shokrian has breached his obligations, and the Court concluded that Plug is likely, but not certainly, to be successful on that claim on the merits. To release Shokrian from the preliminary injunction at the same time as it would have run absent this litigation is counterintuitive.

Shokrian cites two cases from the Second Circuit to support his argument that extending the preliminary injunction beyond November 10, 2026, would be inappropriate because that is when the restriction expires. *See* Dkt. No. 50 at 4 (citing *Ashfield Health LLC v. Jacobson*, No.

21-CV-1717, 2022 WL 12127087, *2 (2d Cir. Oct. 21, 2022); *Aladdin Cap. Holdings, LLC v. Donoyan*, 438 Fed. Appx. 14, 16 (2d Cir. 2011) (summary order)). Neither case is instructive because the district courts denied preliminary injunctive relief.

"Crafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 579 (2017)). "The purpose of such interim equitable relief is not to conclusively determine the rights of the parties, . . . but to balance the equities as the litigation moves forward." *Id.* (citations omitted). "In awarding a preliminary injunction a court must also 'conside[r] . . . the overall public interest.' In the course of doing so, a court 'need not grant the total relief sought by the applicant but may mold its decree to meet the exigencies of the particular case.'" *Id.* (quoting *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20, 24 (2008)). In New York, even if "a non-compete period has terminated, a court can prospectively preclude competition for the period of time that the defendant was in breach of the non-compete." *JA Apparel Corp. v. Abboud*, 591 F. Supp. 2d 306, 344 (S.D.N.Y. 2008), *vacated and remanded on other grounds*, 568 F.3d 390 (2d Cir. 2009). "[A] wrongfully enjoined party is entitled to a presumption in favor of recovery, that party is not automatically entitled to the damages sought. The presumption applies to 'provable' damages." *Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 559 (2d Cir. 2011)

Having reviewed the entire record, and in considering the factors relevant to the Court's preliminary injunction decision, the Court finds that imposition of the preliminary injunction for a period of one year from the date Court issued its preliminary injunction decision (July 24, 2026)

or until this case is finally resolved—whichever occurs earlier—is adequate.[3] Should it later be found that Shokrian was wrongfully enjoined, he has the right to seek damages for provable harm.

As to the scope of the preliminary injunction, having concluded that Plug established only a likelihood of success on its claims, the Court limited Shokrian from the following:

> Directly or indirectly, individually or through any person, firm, corporation or other entity, working in any capacity, consulting with, providing any services to or providing information to any firm, entity or person in the business of designing or manufacturing PEM fuel cell systems for any application or the proton exchange membrane fuel cell system components thereof, PEM MEA's for any application or the components thereof, or for any business involved in generating, transporting, storing or dispensing of hydrogen, whether in liquid or gaseous form, including, but not limited to, electrolysis, liquefaction or otherwise, or any other industries in which Plug Power has done business during Shokrian's employment with Plug Power or which Plug Power was actively considering during such period, including, but not limited to, ACD, until at least November 10, 2026;
>
> 2. Retaining, using, and/or disclosing, either directly or indirectly, Plug Power's Confidential and Proprietary Company Information; and
>
> 3. Directly or indirectly, soliciting, attempting to solicit, accepting business, or assisting any other entity or individual, either directly or indirectly, in soliciting or attempting to solicit, or accepting business from any customers of Plug Power, whether an individual or entity, with whom Shokrian had personal contact or dealings with on behalf of Plug Power or with whom employees reporting to Shokrian had dealing with on behalf of Plug Power, at any time between November 10, 2024 and November 10, 2025, until at least November 10, 2026[.]

Dkt. No. 24 at 38-39.

The Court stated that "[t]he provision at issue is extremely limited to businesses that compete with Plug Power." *Id.* at 35. The Court agrees still today. Shokrian asks the Court to

---

[3] Defense counsel stated in the motion to stay that Shokrian resigned from his employment with ACD upon receipt of the Court's July 24, 2026, decision. *See* Dkt. No. 27-1 at 2 n1.

modify the injunction to give him "permission to work or provide services in LNG, cryogenics, gas processing, general engineering and management for suppliers, vendors or other entities that do not directly compete with Plug in its core hydrogen electrolyzer, hydrogen fuel cell, hydrogen liquefaction, hydrogen storage, hydrogen transportation and hydrogen dispensing markets[.]" Dkt. No. 50 at 18-19. Shokrian states he "fully intends to comply with the Court's preliminary injunction, but he cannot afford to remain unemployed indefinitely." *Id.* at 6. Shokrian contends he "does not seek reconsideration by this brief." *Id.* at 17. Rather, Shokrian asks the Court to clarify that he may do the following:

> (i) he may work for a company that is involved with hydrogen through a separate business unit, so long as he is not involved in that business; (ii) he may, through his own business, contract with or provide services to clients that have had hydrogenrelated projects or are otherwise involved with hydrogen, so long as the work he performs is not in hydrogen and does not compete with Plug's proprietary or otherwise protectable products or services; and (iii) "any other industries" means only the specific proprietary or otherwise protectable products or services that Plug was actively considering during Shokrian's employment.

*Id.* at 16.

Practically speaking, this is asking the Court to reconsider its preliminary injunction ruling.[4] In its July decision, the Court explained that "'[t]he "blue pencil" rule permits a court to partially enforce a restrictive covenant if 'the unenforceable portion is not an essential part of the agreed exchange' and the party enforcing the covenant acted in good faith.'" Dkt. No. 24 at 35 (quoting *Crye Precision LLC v. Duro Textiles*, LLC, 689 Fed. Appx. 104, 107 (2d Cir. 2017 (summary order)). The Court noted that "Shokrian does not explain to the Court how the non-

---

[4] "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citation omitted).

compete agreement could be any narrower. Indeed, during the July 20, 2026, hearing, Shokrian's counsel argued that the Court need not tailor the provision because Plug Power could not meet its initial burden of establishing irreparable harm." *Id.* at 35-36. Shokrian seeks to provide that tailoring three months later but provides no justification for the failure to earlier seek such relief.

Additionally, Shokrian's filing contains the same deficiency that the Court has previously identified. Shokrian presently asserts that "he cannot afford to remain unemployed indefinitely." Dkt. No. 50 at 6. However, the Court stated in its preliminary injunction decision that "[e]nforcement will only prevent Shokrian from being employed in his desired role for a limited period of time. Shokrian has not argued an inability to work at any engineering job in the country." Dkt. No. 24 at 37. The Court reiterated this issue in its decision on the stay motion: "Defendant does not define his 'field,' nor explain how the noncompete clause could be narrowed to allow him to maintain employment in that 'field.'" Dkt. No. 35 at 3. The Court noted that "Defendant has not stated what college or higher education degree(s) he holds beyond engineering, and he does not contest that he could engage with companies who deal with other energy sources." *Id.*

Here, still, Shokrian has not explained why the preliminary injunction keeps him "unemployed." Dkt. No. 50 at 6. Shokrian has provided no new information which gives the Court reason to reconsider its past decisions on this issue. *See Rood, Riddle & Partners, PSC v. O'Brien*, No. 1:26-CV-385, 2026 WL 1758248, *9 (N.D.N.Y. June 18, 2026) ("[E]nforcing the non-compete provision of the agreement would not force Dr. O'Brien to 'abstain from plying [her] trade,' as Defendants suggest. Dr. O'Brien remains free to practice any other form of veterinary medicine within the geographically restricted area, or to alternatively practice equine veterinary medicine outside the identified counties"); *Poller v. BioScrip, Inc.*, 974 F. Supp. 2d 204, 222

(S.D.N.Y. 2013), *on reconsideration*, 2014 WL 13109132 (S.D.N.Y. Apr. 14, 2014) ("With the non-solicitation clause limited to those clients that Poller developed during her employment with BioScrip and the non-compete clause limited to the New York metropolitan area and temporally by one year, Poller is not unduly burdened. . . . Poller could presumably solicit non-IVIG clients, provided that those clients were not those that she developed relationships with solely during her employment with BioScrip. Additionally, Poller repeatedly stated that many of the relationships with doctors she solicited at BioScrip predated her employment there. Accordingly the RCA's solicitation limitations, so long as they are only applicable to those clients or referral sources developed exclusively at BioScrip, would not work to preclude Poller from earning a living").

Shokrian has been preliminarily enjoined from working with or for any person or business engaged in "designing or manufacturing PEM fuel cell systems for any application or the proton exchange membrane fuel cell system components thereof, PEM MEA's for any application or the components thereof" "or for any business involved in generating, transporting, storing or dispensing of hydrogen, whether in liquid or gaseous form, including, but not limited to, electrolysis, liquefaction or otherwise," "or any other industries in which Plug Power has done business during Shokrian's employment with Plug Power or which Plug Power was actively considering during such period[.]" Dkt. No. 24 at 38-39. This is extremely limited. Shokrian has not presented a single reason to the Court as to why he cannot obtain any employment outside of those bounds. Understandably, Shokrian wants to engage in work within "his highly specialized engineering trade," but he has not presented sufficient legal justification that requires the Court to further limit the preliminary injunction.

Shokrian asks the Court to clarify that "he may, *through his own business*, contract with or provide services to clients that have had hydrogenrelated projects or are otherwise involved with

hydrogen, so long as the work he performs is not in hydrogen and does not compete with Plug's proprietary or otherwise protectable products or services[.]" Dkt. No. 50 at 16 (emphasis added). During the show cause hearing on July 20, 2026, Plug argued that Shokrian "was discovered to have essentially been starting a competing business and soliciting our clients, or perspective clients, while employed by us and potentially utilizing Plug Power resources to do so, and then when confronted about it, he lied." Dkt. No. 32 at 3. Plug's attorney stated that in reviewing Shokrian's "calendar entries, which he used similar to a journal[,]" "there is a lot of time and energy being put in talking about developing this business, potential clients, potential customers, potential lines of business that they could be pursuing, and he's doing this all on our company time." *Id.* at 4. The attorney argued Shokrian was "actively developing a competing business on company time." *Id.* at 13.

In response, Shokrian's attorney discussed "Shokrian's wife's business called Enoxis." *Id.* at 16. According to him, "[t]he formation of Enoxis was what [Plug] claim[s] is the catalyst for -- to get the ball running so he can compete with Plug, but they haven't produced anything by way of evidence or testimony to suggest that it is. In reality, Enoxis was a business started by his wife contemplating selling merchandise." *Id.* Shokrian's counsel stated that "[i]t had nothing do with the -- but more importantly, Enoxis has never done any business whatsoever, hydrogen, Poshmark or otherwise. It's not -- nothing that -- has ever happened." *Id.*

The Court later asked Plug's counsel whether he knew "what the Oxion Company is or does?" *Id.* at 29. Plug's attorney responded, "I'm not sure, and maybe that's another one. . . . What it showed was there is a clear history, whether it's Oxion or Enoxis or whatever, whether it's Shokrian, LLC, or just an uncreated business . . . . What was clear is that he was developing this." *Id.* at 29-30.

In their preliminary injunction motion, Plug argued that "[o]ne of the two companies he disclosed is called 'Oxion Energy Solutions LLC,' which Shokrian described as 'focused on project development in waste-to energy solutions, primarily from dairy waste.'" Dkt. No. 15-1 at 15 (citation omitted). Plug asserted that "[t]his is the exact same line of business as that of Company W—which converts livestock manure (*i.e.*, cow manure) into energy—indicating that Shokrian has continued to pursue the side venture that he developed while employed by Plug and using Plug's confidential and proprietary information and business relationships." *Id.* Plug argued that "Shokrian formed this entity during the duration of his non-compete obligations to Plug and likely did so in violation of his continuing obligation to hold Plug's confidential and proprietary information in the strictest confidence." *Id.* Shokrian did not address this issue in his response to the preliminary injunction motion. *See* Dkt. No. 19.

Now, Shokrian references "his own business" which he seeks to be able to "contract with or provide services to clients that have had hydrogen related projects or are otherwise involved with hydrogen[.]" Dkt. No. 50 at 16. Shokrian's request supports the Court's previous conclusion and decision herein. Shokrian is alleged to have been dishonest with Plug regarding his business endeavors while still employed at Plug. The potential discrepancies between Shokrian's previous representations about his personal business and his present request support the Court's decisions.

Finally, Defendant asks that the Court "require Plaintiff to substantially increase its posted security under Rule 65(c) to a sum sufficient to cover the loss of earnings Shokrian will incur or, in the alternative, advance the trial on the merits under Rule 65(a)(2) so that any claimed violation is decided before the extended date." Dkt. No. 50 at 17. The Court is unclear as to how Defendant would like the Court "to substantially increase" a bond or security when one has not been posted in this case. In its August decision, the Court noted that "Defendant never requested

a bond prior to the filing of his motion for a stay." Dkt. No. 35 at 7. As stated in that decision, "'[a] district court may dispense with the posting of security entirely where parties sought to be enjoined or restrained have not shown that they will likely suffer harm absent the posting of a bond[.]'" *Id.* (quoting *Interlink Int'l Fin. Servs., Inc. v. Block*, 145 F. Supp. 2d 312, 315 (S.D.N.Y. 2001) (additional citation and quotation marks omitted). Beyond Defense counsel summarily asserting that the preliminary injunction will keep Defendant "unemployed indefinitely," no evidence has been presented to the Court that Defendant cannot obtain any employment, anywhere in the world, in any engineering field, that will cause harm to him and his family. Without any "proof of likelihood of harm," *Ferguson v. Tabah*, 288 F.2d 665, 675 (2d Cir. 1961), the Court will not require a bond to be posted.

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Defendant's request to termination the preliminary injunction by November 10, 2026, is **DENIED**; and the Court further

**ORDERS** that the imposition of the preliminary injunction shall be for a period of one year from the date Court issued its preliminary injunction decision (July 24, 2026) or until this case is finally resolved, whichever occurs earlier; and the Court further

**ORDERS** that the Clerk of the Court serve a copy of this Order on all parties in accordance with the Local Rules

**IT IS SO ORDERED.**

Dated: November 2, 2026
Albany, New York

Mae A. D'Agostino
U.S. District Judge